# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### HAMMOND DIVISION

BRIAN VUKADINOVICH,      )
                                   )
                Plaintiff,       )
     vs.                        )
                                   )     CAUSE NO. 2:13-CV-144-PPS
HANOVER COMMUNITY SCHOOL   )
CORPORATION, ET AL.,        )
                                   )
              Defendants.   )

## OPINION AND ORDER

Brian Vukadinovich was fired from his job as a teacher at Hanover Community Schools and, representing himself, he brought this action against Hanover Schools and some of its administrators. The case was tried over the course of five days. The parties now have filed eight post-trial motions. This Opinion and Order is the result of reviewing thousands of pages of testimony and evidence and hundreds of pages of often misguided and vitriolic briefing, much of which was of no assistance to me. At the heart of this over-litigated dispute is a simple single-plaintiff employment dispute that proceeded to trial on claims of age discrimination and retaliation as well as a due process claim. The jury found in favor of Vukadinovich, but only on the due process claim, and it awarded him $203,840.39 in damages. The issues arising from that verdict are addressed below.

### Background

I will provide a brief summary of the facts and history of this case as background and dive deeper into the evidence and testimony where necessary later when

addressing specific post-trial motions. Brian Vukadinovich was fired from his teaching job at Hanover Schools.[1] Vukadinovich worked there for eight school years until his employment ended in June 2012. Vukadinovich was first informed of his potential termination by letter given to him by school principal Justin Biggs on May 2, 2012. The letter stated that the reason for the nonrenewal of Vukadinovich's contract was a "reduction in force."

Vukadinovich requested a meeting to discuss his potential termination with the School's superintendent, Carol Kaiser, which was held on May 11, 2012. Vukadinovich challenges the sufficiency of this meeting, arguing that Kaiser deflected his inquiries about the reasons for his termination and opportunities to save his job. After their meeting, Kaiser recommended to the School Board that Vukadinovich's contract not be renewed because of a justifiable reduction in force, explaining that his classes were under enrolled. Vukadinovich requested a meeting with the School Board, but they refused to meet with him and then later voted not to renew his contract.

Vukadinovich sued the Hanover School Corporation, the School Board, the superintendent, the principal, and individual School Board members alleging that his contract was not renewed due to his age—he was 60 at the time of his termination—and in retaliation for his successful settlement of an earlier lawsuit. He also alleged that he

---

[1]Because none of the parties requested an official transcript after trial, my discussion and analysis of the trial testimony throughout this opinion is based on my trial notes and recollection of the evidence. I also have had the opportunity to review the unofficial transcript, but have avoided quoting from it until the official version is prepared.

was not afforded a meeting with the School's governing body, the School Board, in violation of his constitutional due process rights, as well as in violation of his employment contract and state law.

The parties filed cross motions for summary judgment and, after my rulings on those motions, the claims that remained for trial were age discrimination against the School, retaliation against the School, and constitutional procedural due process against the School, its former principal (Justin Biggs), and its former superintendent (Carol Kaiser). The case proceeded to trial on those claims.

After Vukadinovich rested at the close of his case, I granted Biggs' motion for judgment as a matter of law on the only claim remaining against him (the due process claim), and he was dismissed from the case. [DE 372.] The remaining issues went to the jury, which found in favor of the School on the age discrimination and retaliation claims and in favor of Vukadinovich on the constitutional procedural due process claim. The jury awarded him $203,840.39 in compensatory damages. [DE 373, 379, 380.]

The parties filed several post-trial motions. Vukadinovich moved for a hearing on damages [DE 382], a new trial as to the retaliation claim due to plain error or omission of a jury instruction [DE 389], judgment notwithstanding the verdict as to the compensatory damages claim against Kaiser [DE 391], judgment notwithstanding the verdict as to the retaliation claim against the School [DE 392], judgment notwithstanding the verdict as to the age discrimination claim against the School [DE 393], and judicial notice of a newly discovered fact [DE 403]. The School filed a

renewed motion for judgment as a matter of law on the due process claim or, in the alternative, motion to vacate the damage award. [DE 394.]

## Discussion

Because there are so many post-trial motions pending before the Court, I have attempted to group them together below. The first group of motions concerns challenges to the due process claim. The second group relates to challenges to the age discrimination and retaliation claims. And the third group of motions are best described as miscellaneous motions. I take up each group of motions below.

## Motions Relating to the Due Process Claim

In their renewed motion for judgment as a matter of law, both the School and Superintendent Kaiser challenge the jury's finding that Vukadinovich's due process rights were violated. They argue that there was no due process violation. The School further argues that even if there was a due process violation, the School cannot be held responsible for the actions of its superintendent, Ms. Kaiser. For her part, Kaiser claims she is entitled to qualified immunity. [DE 394 at 5-6.]

In the amended complaint, Vukadinovich says that the School, the superintendent, the principal, and each School Board member violated his due process rights when they failed to follow what Vukadinovich alleged were statutory requirements under state law for a private meeting with the School Board. He further claimed that the defendants' decision to terminate him without a chance to tell his side of the story was a violation of his constitutional due process rights. On summary

judgment, I granted the defendants' motion on the state law claims. [DE 325 at 20.] State law did not mandate a meeting with the School Board before it fired Vukadinovich. But I found that a genuine dispute existed as to whether the process afforded to Vukadinovich—the meeting with Kaiser—was sufficient to satisfy constitutional due process requirements. [*Id.* at 22-23.] So the federal due process claim was allowed to go forward against Biggs and Kaiser in their individual capacities, as well as against the School, and summary judgment was granted as to all other defendants. [*Id.* at 23.] The principal issue at trial was whether Vukadinovich's meeting with Superintendent Kaiser was sufficient to satisfy due process requirements. A subsidiary issue was whether the School could be on the hook for damages if Kaiser violated Vukadinovich's due process rights by providing an insufficient hearing.

Here's what the jury found: (1) that Kaiser violated Vukadinovich's due process [DE 380]; (2) that the School Board delegated to Kaiser the responsibility for deciding the process that was due to teachers being terminated; (3) that there were compensatory damages caused by the violation of Vukadinovich's due process; and (4) that $203,890.38 was due to Vukadinovich because of the School's violation of Vukadinovich's right to due process [DE 379].

The School first challenges the due process verdict on the grounds that there could be no due process violation if Vukadinovich was unable to prove his age discrimination and retaliation claims. To support this puzzling argument they point to language in my summary judgment opinion. [DE 394 at 10.] But this argument

misinterprets what I was getting at in my opinion. In the summary judgment opinion, I noted that "[t]here is no reason, everything else aside, that this meeting with the superintendent couldn't have been sufficient to qualify as the process that Vukadinovich was due . . . [because Kaiser] had the power to consider the competing interests, to weigh them, and to consider the nonrenewal of Vukadinovich's contract if she heard something convincing." [DE 325 at 22.] A disputed issue remained, however, regarding whether or not Kaiser actually *did* these things. It is true that I noted in my opinion that "[i]f the jury finds that Biggs terminated Vukadinovich for *impermissible reasons*, and that the hearing with Kaiser was a sham and a mere formality, then the hearing couldn't have satisfied the due process requirements." [*Id*. (emphasis added).] The School's argument seems to be that the only "impermissible reason" is one based on age or in retaliation. But I was not asserting that the *only* way the meeting could be found to be procedurally deficient was if the jury found that Vukadinovich proved his age discrimination and retaliation claims. [*Id*.] Rather, I was making the point that while a meeting with the superintendent *could* be sufficient process to satisfy constitutional due process requirements, it might not be if the hearing was a sham.

Under the Due Process Clause a deprivation of property must be preceded by notice and an opportunity for a hearing appropriate to the nature of the case. The parties agree that Vukadinovich had a property interest in his employment by virtue of both the Indiana statutes and his employment contract. In the context of public employment, due process requires that an employee be given notice of his potential

termination, an explanation of the reasons for the decision to potentially terminate him, and an opportunity to present his side of the story. *Cleveland Bd. of Ed. v. Loudermill*, 470 U.S. 532, 545-46 (U.S. 1985) (explaining procedural due process requirements); *Doyle v. Camelot Care Centers, Inc.*, 305 F.3d 603, 617-18 (7th Cir. 2002) (same). There is no question that Vukadinovich received a hearing from Kaiser. The issue is whether the substance of the hearing provided by Kaiser was sufficient to satisfy the requirements of the Due Process Clause.

There is no fixed formula to determine whether a hearing is sufficient to satisfy the requirements of due process. Rather, it is a flexible inquiry taking into account the situation at hand. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. at 545. "In general, something less than a full evidentiary hearing is sufficient prior to adverse administrative action." *Id.* That said, the decisionmaker must be willing to listen to an employee's side of the story at the hearing. "A hearing where the decisionmaker has prejudged the outcome does not comport with due process because it effectively denies the employee the opportunity to respond to the accusations against him." *Powers v. Richards, et al.*, 549 F3d 505, 512-13 (7th Cir. 2008); *see also Ryan v. Illinois Dep't of Children & Family Servs.*, 185 F.3d 751, 762 (7th Cir. 1999) ("Due process requires that, prior to termination, an employee be given the chance to tell her side of the story, and that the agency be willing to listen. Otherwise, the 'opportunity to respond' . . . is no opportunity at all."). In other words, the hearing has to mean something; it can't be a sham. Otherwise, what's the point?

Based on the evidence presented at trial, a reasonable jury could have found that the process afforded Vukadinovich was insufficient to satisfy the requirements of due process. One glaring issue for the defendants at trial was the fact that no one could point to the clear, uncontested, and uncontradicted reason that Vukadinovich was terminated. In fact, the testimony of the defense's key witnesses—Biggs and Kaiser—was inconsistent and, at times, nonsensical. The evidence showed that the School was playing a game of Whack-a-Mole with Vukadinovich—they would tell him one reason for his termination and when he would try to dispel it, they would then come up with another reason.

The problem with the School's wishy-washy explanation of the reason for Vukadinovich's termination was magnified at trial when the jury was able to consider the credibility of Biggs and Kaiser. Recall that Vukadinovich was acting *pro se,* and when he was questioning Kaiser and Biggs, they were both *extremely* evasive and combative, often responding to his questions with a query of their own or by repeatedly asking him to define what are otherwise commonplace terms. It was an excruciating exercise to observe, especially when they put up no such fight when questioned by defense counsel. These theatrics were not only distracting and off putting, but they also added flavor to the argument that the reasons the defendants gave for Vukadinovich's termination were pretextual. To put it bluntly, after several years of presiding over this litigation, including a five day jury trial, I cannot tell you why Vukadinovich was terminated. The jury surely must have sympathized with Vukadinovich, who simply

wanted a straight-forward explanation for why he was being let go. In the end, it was reasonable for a jury to look at the mess of contradictory evidence and courtroom theatrics and conclude that Vukadinovich was not given a sufficient explanation of the reasons for the decision to potentially terminate him and, therefore, a meaningful opportunity to respond, all in violation of his right to due process.

I will break down some of the key contradictions in evidence presented at trial to provide a sense of the confusion that the School created that reasonably could have resulted in the jury finding that Vukadinovich's right to due process was violated. Biggs gave notice to Vukadinovich of his potential termination on May 2, 2012, when Biggs hand delivered Vukadinovich a letter. The letter stated, "The reason for this preliminary decision is as follows: The teacher is subject to a justifiable decrease in the number of teaching positions, more commonly called a reduction-in-force (RIF) per IC 20-28-7.5-1(b)(3)." [Pl. Ex. 19.] The jury heard Biggs testify that when he gave Vukadinovich the letter, Vukadinovich asked if the decision had anything to do with his performance and Biggs said that it did not. Biggs testified that Vukadinovich's classes were discontinued for a lot of reasons, one being that his classes did not adequately prepare students for college and careers, but admitted that this reason was not provided in the termination letter given to Vukadinovich.

Biggs also testified that enrollment numbers had something to do with the decision to eliminate Vukadinovich's classes, resulting in his termination. Biggs later testified, however, that enrollment numbers did *not* determine what classes were

9

cancelled. He explained that one of the main reasons Vukadinovich's classes were discontinued was because they didn't fit the career vision that the superintendent had for the school, but admitted that no one ever bothered to this tell to Vukadinovich during the termination proceedings.

The jury also heard Kaiser testify that Vukadinovich was fired because his classes were not Career Technical Education ("CTE") classes, which she explained are part of a program specified and subsidized by the State of Indiana to provide certain types of classes to high school students to prepare them for success after high school. After receiving the written notice of potential termination from Biggs, Vukadinovich met with Kaiser on May 11, 2012. The jury heard Kaiser testify that, when she met with Vukadinovich, she did not tell him that the CTE issue was the reason for his termination. And what was her explanation for keeping him in the dark? It's because Vukadinovich never specifically asked about it, as if it was some sort of guessing game. So instead of spending his time in the meeting with Kaiser responding to the CTE class issue, Vukadinovich focused his inquiry on the enrollment needed to save his job and opportunities to increase enrollment. This was entirely sensible—that was the reason he was being fired, or so he was led to believe. Nonetheless, Kaiser testified, when questioned by Vukadinovich during his case in chief, that enrollment numbers were never the issue. She said that there was no magic number to save Vukadinovich's job.

But her testimony is flatly contradicted by the May 17, 2012 letter that she wrote to the

School Board recommending Vukadinovich's termination.  In that letter she wrote:

> On Friday, May 11, 2012, Mr. Vukadinovich and I met.  After careful consideration of the teacher's statements, I recommend to you that the teaching contract of Mr. Brian Vukadinovich not be continued, effective at the end of the 2011-2012 school year.  My recommendation is based upon a justifiable decrease in the number of teaching positions set forth in I.C. 20-28-7.5-1(b)(3) and is consistent with the layoff policy as stated in the Master Agreement between the Hanover Organization of Professional Educators (H.O.P.E.) and the Hanover Community School Corporation.  *The student enrollment numbers in Mr. Vukadinovich's transportation systems, construction systems, and manufacturing systems classes at the high school have declined over time.*  The Project Lead the Way classes at the middle school taught by Mr. Vukadinovich have failed over a period of years to generate student enrollment in the high school's Project Lead the Way Program.

[Pl. Ex. 41 (emphasis added).]

The jury then heard Kaiser testify that she raised the CTE issue to the School

Board, but she did so verbally.  Yet a member of the School Board denied this.  Jason

Sakelaris, a School Board member at the time of Vukadinovich's termination, testified

that he did not remember being told or reading anything in the packet given to the

School Board regarding the proposed termination saying that Vukadinovich should be

terminated because of something having to do with CTE classes.  After receipt from

Kaiser of the recommendation letter, the School Board voted to terminate

Vukadinovich's contract.

Later, during the defense's case, and after hearing all of this testimony, the jury then heard Kaiser testify that student enrollment *was* one of the reasons that Vukadinovich was terminated. So which was it? Were Vukadinovich's enrollment numbers low, resulting in the cancellation of his classes and subsequent termination, which would mean that there *should* be an enrollment number that would save his job? Or were his classes cancelled and he subsequently terminated because his classes were not CTE classes, a reason he was never given during the entire termination process?

Due process requires that an employee be given notice of his potential termination, an explanation of the reasons for the decision to potentially terminate him, and an opportunity to present his side of the story. The jury was so instructed. [DE 376 at 32.] Furthermore, a hearing where the decisionmaker has prejudged the outcome, effectively denying the employee the opportunity to respond to the accusations against him, is violative of an individual's right to due process. Based on the evidence it heard at trial, the jury reasonably could have concluded that Vukadinovich was not given an explanation of the reasons for the decision to potentially terminate him. The defendants presented no evidence that Vukadinovich was given *any* notice or explanation that the reason he was terminated was because he was not teaching CTE classes, yet initially Kaiser testified this was the *only* reason for his termination, while Biggs seemed to indicate that it was at least *one* reason. And to repeat, Kaiser admits that she did not tell Vukadinovich why he was being terminated, and her only excuse for this was that he

never asked.  That defies common sense.  It isn't a game of "Guess the Reason You're Being Fired."  A person needs to be told the reason, in advance, so that they can have a fighting chance to present their side of the story.  Vukadinovich could not have been expected to present his side of the story and attempt to save his job when he didn't have any idea of the reasons for the termination.

What's more, the jury heard school officials testify that the decision to cancel all of Vukadinovich's classes was made *prior* to his hearing with Kaiser.  If that was the case, a jury reasonably could conclude that the outcome of Vukadinovich's meeting was a *fait accompli* and nothing he said could have changed the outcome because he would have been fighting to teach classes that no longer existed.  Construing all of the evidence and making all reasonable inferences in Vukadinovich's favor, I find that a reasonable jury could have found that Kaiser violated Vukadinovich's right to due process.

Kaiser argues that even if she violated Vukadinovich's procedural due process rights, judgment should be entered in her favor because she is entitled to qualified immunity.  [DE 394 at 15.]  "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  The defendants try to side step the point that the constitutional

right to procedural due process is both clearly established and well known by arguing that the Indiana statutes governing the cancellation of a teacher's contract were new in 2012, when Vukadinovich was terminated, and had not yet been interpreted by a court. [DE 394 at 16.] But that's neither here nor there. While courts look to state law to determine whether someone has a property interest (and in this case, that issue was conceded), the question of what process is due is a matter of federal law. *See Goros v. Cty. of Cook*, 489 F.3d 857, 859 (7th Cir. 2007).

It is plain that at the time of the events at issue in this case, the law was settled that before a property right can be taken from someone by the government, there has to be notice and an opportunity to be heard before an impartial tribunal. *Levenstein v. Salafsky*, 164 F.3d 345, 352 (7th Cir. 1998) ("[F]undamentally biased process is not due process."); *Bakalis v. Golembeski*, 35 F.3d 318, 325-26 (7th Cir. 1994) ("[A]ccording to Supreme Court and Court of Appeals precedent, due process requires a hearing by an impartial tribunal."); *Ciechon v. City of Chicago*, 686 F.2d 511, 517 (7th Cir. 1982) ("Due process requires that a hearing must be a real one, not a sham or a pretense." (internal citations and quotations omitted)). Thus, Kaiser's qualified immunity argument is a complete nonstarter.

The next issue is whether the School could be on the hook for Kaiser's due process violation. A municipality is not liable under § 1983 unless the deprivation of a constitutional right—in this case a violation of procedural due process—is caused by a

municipal policy or custom, *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978), or if the constitutional deprivation was done "by a person with final policymaking authority." *Kujawski v. Bd. of Comm'rs of Bartholomew Cty., Ind.*, 183 F.3d 734, 737 (7th Cir. 1999). "Final policymaking authority may be granted directly by statute or delegated or ratified by an official having policymaking authority." *Id.* The official may be a final policymaker for the municipality "'in a particular area, or on a particular issue.'" *Id.* (quoting *McMillian v. Monroe County*, 520 U.S. 781, 785 (1997)).

For the School Board to be responsible for Kaiser's failure to provide sufficient process to Vukadinovich, there had to be evidence that the School Board delegated to Kaiser the authority to set policy—and in this case that means the authority to decide how much process Vukadinovich was due prior to his termination. The jury heard Mary Joan Dixon, then President of the School Board, testify that due process was handled by the superintendent per state statute, and on suggestion of the School's attorney, and that Kaiser was in complete control of the due process meeting held with Vukadinovich to discuss his potential termination. This is evidence that Kaiser was in fact a policymaker. And while the School Board ultimately voted on whether or not to terminate Vukadinovich, that is of no matter because the authority to terminate an employee is different than the authority to decide the scope of the due process hearing, and the jury heard evidence that that decision rested with Kaiser. For this reason, it was not unreasonable for the jury to conclude that the Board delegated to Kaiser the

15

decision of what process to give Vukadinovich, leaving the School Board on the hook for Kaiser's violation of Vukadinovich's constitutional right to due process. So the defendants' motion for a new trial on the due process claim is denied.

Finally we reach the issue of the amount of the compensatory damages award. In their renewed motion for judgment as a matter of law or, in the alternative, motion to vacate damage award, the School argues that even if I find that a reasonable jury could have found that Vukadinovich's constitutional right to due process was violated, Vukadinovich only is entitled to nominal damages, and the jury's $203,840.89 compensatory damage award must be vacated. [DE 394 at 16.] Rule 50(b) allows me to enter judgment in the School's favor if, construing all the evidence and making all reasonable inferences in Vukadinovich's favor, I find that a reasonable jury could not have found for Vukadinovich. *Harvey v. Office of Banks & Real Estate*, 377 F.3d 698, 707 (7th Cir. 2004). I note that "[t]he jury's damage calculations are entitled to great deference, and the Court may only vacate the jury's verdict if the award is either "monstrously excessive," "shock[s] the conscience of the court," has "no rational connection to the evidence," or clearly appears "to be the result of passion and prejudice." *See McNabola v. Chicago Transit Auth.,* 10 F.3d 501, 516 (7th Cir. 1993); *Levka v. City of Chicago*, 748 F.2d 421, 424 (7th Cir. 1984); *Fall v. Indiana Univ. Bd. of Trustees*, 33 F. Supp. 2d 729, 744 (N.D. Ind. 1998).

The United States Supreme Court recognizes the importance of protecting the "absolute" right to procedural due process.

> Procedural due process rules are meant to protect persons not from deprivation, but from the mistaken or unjustified deprivations of life, liberty, or property. Thus, in deciding what process constitutionally is due in various contexts, the Court repeatedly has emphasized that procedural due process rules are shaped by the risk of error inherent in the truth-finding process. Such rules minimize substantively unfair or mistaken deprivation of life, liberty, or property by enabling persons to contest the cases upon which a State proposes to deprive them of protected interests.

*Carey v. Piphus*, 435 U.S. 247, 259-60 (1978) (internal quotation marks and citations omitted). "Accordingly, damages for a procedural due process violation can include damages for a termination if there is a causal connection between the termination and the failure to provide a hearing." *Casana v. City of Loves Park*, 574 F.3d 420, 426 (7th Cir. 2009) (discussing *Carey v. Piphus*, 435 U.S. 247, 259-60 (1978).) In *Carey*, the Supreme Court addressed the issue of the damages to which a plaintiff is entitled when the underlying deprivation was justified and would have happened regardless of the process given, yet there was a violation of procedural due process. In seeking to protect this "absolute" constitutional right while preventing a windfall, the Court held that if the trier of fact determines that the underlying deprivation was justified, a claimant is entitled to recover nominal damages when there is a denial of due process without proof of actionable injury. *Carey*, 435 U.S. at 266-67. This holding is embraced by this Circuit. *See Casana*, 574 F.3d at 426 ("If the lack of hearing did not cause [plaintiff] any

pecuniary harm—that is, if her termination was nonetheless justified on the merits (a matter we do not decide today)—[plaintiff] may recover for her constitutional injury only nominal damages not to exceed one dollar.")

The defendants argue that because the jury rejected any claim that the decision to terminate Vukadinovich was the product of age discrimination or retaliation under the ADEA, it therefore was not due to "*any* improper basis," thereby making it "justified." [DE 394 at 18 (emphasis added).] As a result, the defendants argue that Vukadinovich only is entitled to damages caused by the lack of hearing, rather than the termination itself, and because Vukadinovich failed to prove damages specific to the failure to receive a valid hearing, he only is entitled to nominal damages rather than the $203,840.89 awarded by the jury.

The problem with the defendants' argument is that it rests upon the assumption that because the jury did not find an ADEA violation, the decision to terminate Vukadinovich was "justified" and would have occurred even if Vukadinovich was given a proper hearing. But this is not the law. Rather, the issue is whether there is a causal connection between the termination and the failure to provide a sufficient hearing. *See Alston*, 231 F.3d at 386. At trial, the jury heard evidence that Vukadinovich was never clearly told the reason(s) for his termination, thus preventing him from having a real opportunity to present his side of the story. But as the jury heard, that may not have mattered anyway because Vukadinovich's classes were terminated prior

to his meeting with Kaiser, implying that her mind already was made up about his fate going into that meeting.

Let's suppose that Vukadinovich was given a hearing with a open-minded person who provided him an explanation of the reasons for the decision to potentially terminate him and allowed him to respond accordingly. As I have already addressed, the exact reasons for Vukadinovich's termination remain fuzzy after all of the conflicting evidence presented at trial, but two of the common themes were low enrollment in his classes and cancellation of his classes because they were not CTE classes. If enrollment was an issue, an open-minded/unbiased party would have provided him with the information he sought—the enrollment numbers needed to keep his job. In any event, the jury heard testimony that classes with *lower* enrollment than his were not cancelled, thus calling into question whether enrollment was the real reason for his termination. What's more, the jury heard testimony that a different teacher, who had classes with low enrollment, was allowed to "advertise" for his classes using posters and announcements to drum up enrollment. This effort allowed him to keep his classes and, presumably, his job. Yet when Vukadinovich asked if he could do the same thing, he was told he could not. A fair minded person conducting a due process hearing might have found these things persuasive. The jury also heard evidence that students signed a petition to keep Vukadinovich's classes and some sought to enroll in his cancelled classes, but the School refused to allow them to enroll

because they already were cancelled. This type of information might have been much more persuasive if presented to someone who had not already prejudged the outcome of the due process hearing.

If Vukadinovich's classes were cancelled to make room for CTE classes, a fact Kaiser admits was not told to Vukadinovich prior to his hearing, he might have been able to argue the point that other non-CTE classes were not cancelled or identify other classes that were not cancelled that he was licensed to teach, or even offer to complete the requisite training to teach a CTE class. But, as the jury heard, Vukadinovich was deprived of the opportunity to present this side of the story and potentially save his job because he was deprived of the constitutionally requisite process.

After hearing all of the evidence presented at trial, including the form and substance of the process afforded Vukadinovich, the disparate treatment of teachers with low enrollment, the desire of the students to take Vukadinovich's classes, and his positive track record prior to notification of his proposed termination, it would be reasonable for a jury to conclude that if Vukadinovich had received proper process—notice, an explanation of the reasons for the decision to potentially terminate him, and an opportunity to present his side of the story—and his hearing had been before someone who was willing to listen to his side of the story, rather than someone who prejudged the outcome of the hearing, he might not have been terminated. In short, construing all of the evidence in the light most favorable to Vukadinovich, a

reasonable jury could readily have concluded that he might have saved his job if he was afforded proper due process. As such, it was not unreasonable for the jury to award damages for Vukadinovich's termination as part of its compensatory damages calculation for the procedural due process violation.

In addition, the amount of compensatory damages, $203,840.89, that they jury awarded was not unreasonable. As discussed above, "damages for a procedural due process violation can include damages for a termination if there is a causal connection between the termination and the failure to provide a hearing." *Casana*, 574 F.3d at 426. As the jury was instructed, compensatory damages "must be based on evidence and not speculation or guesswork. That does not mean, however, that compensatory damages are restricted to the actual loss of money; they include both the physical and mental aspects of the injury, even if they are not easy to measure." [DE 376 at 38.] I trust that the jury heeded this instruction and I have no basis to find that it did not. As such, based on the evidence it heard at trial from both parties, this number is not overtly unreasonable.

I can't read the jury's mind, but I note that the final damage calculation was close to the mean of the numbers for lost earnings provided by Vukadinovich's expert and the defendants. The jury heard Vukadinovich's expert witness testify that the income Vukadinovich lost from 2012-2016 as a result of his termination was $267,016.76 based on what his expert calculated would have been Vukadinovich's salary for the remainder

of the 2012 school year through 2016 less the amounts Vukadinvoch was paid for unemployment benefits and his pension. The defendants challenged that number at trial because they believe Vukadinovich's expert made some incorrect assumptions. At bottom, it appears that the jury awarded Vukadinovich roughly three years of salary. This likely was the result of some compromise among the jurors. But in all events, the amount awarded is neither shocking nor excessive, and it is supported by the evidence.

In sum, the defendants' motion for a new trial on the due process claim, or in the alternative to vacate the damage award on that claim, is denied.

I'll now turn to Vukadinovich's motions relating to the due process claim. In his motion for judgment notwithstanding the verdict as to the compensatory damages claim against Carol Kaiser, DE 391, Vukadinovich makes the misguided argument that Kaiser *also* should be on the hook for compensatory damages, asking for an impermissible double award for the same injury. He notes that the jury initially had checked "YES" to the question on the Kaiser verdict form that read "Do you, the jury, unanimously find that Plaintiff has proved by a preponderance of the evidence compensatory damages for the injuries caused by the violation of his due process? (*See* Instruction Nos. 35 & 36 for the definition of "compensatory damages.") and scratched out that answer to change its response to "NO." [*See* DE 380 at 2.] The jury ultimately checked "YES" to the question on the School's verdict form that read "Do you, the jury, unanimously find that Plaintiff has proved by a preponderance of the evidence

compensatory damages for the injuries caused by the violation of his due process? (*See* Instruction Nos. 35 & 36 for the definition of "compensatory damages.") and went on to award Vukadinovich $203,890.39 in compensatory damages.

Vukadinovich asserts that the change in the verdict is irrational and should be overruled because Kaiser violated his right to due process. [DE 391 at 2.] But nothing about the verdict is irrational. The jury merely was following the jury instructions that explained that if the jury found that Kaiser violated Vukadinovich's due process rights and that the School Board delegated to Kaiser the responsibility for deciding the process that was due to teachers having their employment contract terminated, it may award compensatory damages from the School for injuries Vukadinovich proved by a preponderance of the evidence and further explained that Vukadinovich may only receive one full compensation for his injuries, and double recovery for the same injury is not allowed. [DE 376 at 38-40.] The jury properly followed those instructions, which prevent impermissible double recovery. *Duran v. Town of Cicero, Illinois,* 653 F.3d 632, 640 (7th Cir. 2011) (finding that asking the jury to determine damages on a defendant-by-defendant basis and also separately for the municipality for a single, indivisible injury "was error, and it led directly to the problem of double recovery.") Furthermore, Vukadinovich did not object to either of those instructions. For these reasons, Vukadinovich's motion for judgment notwithstanding the verdict as to the compensatory damages claim against Carol Kaiser is denied.

**Motions Relating to the Claims of Age Discrimination and Retaliation**

Vukadinovich has filed two other motions seeking entry of judgment in his favor that he captions as motions for judgment notwithstanding the verdict, but are now considered renewed motions for judgment as a mater of law under Federal Rule of Civil Procedure 50. The problem is that Vukadinovich never made the requisite motion for a judgment as a matter of law after he was fully heard on these issues at trial, but prior to the case being submitted to the jury, as required under Rule 50. Rule 50(a)(2) states that "[a] motion for judgment as a matter of law may be made at any time before the case is submitted to the jury." Fed. R. Civ. Pro. 50(a)(2). Rule 50(b) states that "[i]f the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted that action to the jury subject to the court's later deciding the legal questions raised by the motion. No later than 28 days after the entry of judgment . . . the movant may file a renewed motion for judgment as a mater of law." A party who fails to file a pre-verdict motion as a matter of law cannot challenge the sufficiency of the evidence after the verdict. *See Prod. Specialties Grp., Inc. v. Minsor Sys., Inc.*, 513 F.3d 695, 699 (7th Cir. 2008). But there is a narrow exception to this rule, according the Seventh Circuit:

> [W]e have implied that there is an exception to this rule of forbearance when the failure to review a sufficiency-of-the-evidence argument would result in manifest injustice. Even when that exception applies, however, the review is limited to determining whether there was any evidence to support the jury's verdict, irrespective of its

24

> sufficiency, or whether plain error was committed which, if not noticed, would result in a manifest miscarriage of justice.

*S.E.C. v. Yang*, 795 F.3d 674, 680 (7th Cir. 2015) (internal quotation marks and citations omitted). As I will discuss below, because Vukadinovich fails to meet this heightened standard, both motions, DE 392 and DE 393, will be denied.

In support of his motions for judgment notwithstanding the verdict on his age discrimination and retaliation claims, Vukadinovich filed a two and one page motion (respectively) containing only a brief summary of evidence presented at trial that he views as favorable to his claim. These filings don't come close to meeting the heightened "manifest injustice" standard because the question I must answer is whether there was *any* evidence to support the jury's verdict, irrespective of its sufficiency, and there was.

The School presented evidence of several non- discriminatory or retaliatory reasons for the decision not to renew Vukadinovich's contract including: (1) a reduction in force due to the under enrollment and resultant cancellation of Vukadinovich's classes; (2) the cancellation of Vukadinovich's classes because they were not part of a program specified and subsidized by the State of Indiana to provide certain types of classes to high school students to prepare them for success after high school; and (3) Vukadinovich was not licensed to teach any of the classes for which there were available teaching positions. Even if Vukadinovich presented contrary evidence that his termination was the result of age discrimination or retaliation, that is

of no matter in this analysis due to the heightened standard Vukadinovich's motions face.  For these reasons, Vukadinovich's motions for judgment notwithstanding verdict as to the age discrimination and retaliation claims are denied.

In his fourth motion, styled as a motion for new trial, Vukadinovich argues that a plain error was made in the jury instructions because the jury was not instructed that the School could be held liable for Biggs' alleged retaliatory actions.  [DE 390.] Vukadinovich asserts that I accidentally omitted his proposed jury instruction as to vicarious liability and that the jury never was specifically instructed that the School could be held liable for Biggs' alleged retaliatory actions via a "cat's paw" theory of liability that was previously referenced in my summary judgment opinion.  [DE 390 at 1-3.]  In my summary judgment opinion, I denied the defendants' motion for summary judgment on the retaliation claim and noted that "[u]nder the cat's-paw theory, at least, a jury could impose liability against the School."  [DE 325 at 14.]  In other words, the jury could have found the School liable for retaliation if it was proved that the School adopted Biggs' recommendation to fire Vukadinovich without making its own independent analysis.  [*Id.* at 12.]  But that analysis did not create a requirement to include a specific "cat's paw" jury instruction.

Here's how I instructed the jury on the retaliation claim:

> Plaintiff claims that he was retaliated against when his employment contract was terminated by Hanover Community School Corporation because Plaintiff settled a prior age discrimination lawsuit against another school corporation.  To

> succeed on this claim, Plaintiff must prove by a preponderance
> of the evidence that Hanover Community School Corporation
> terminated his employment contract because the Plaintiff
> settled a prior age discrimination lawsuit against another
> school corporation. To determine that Plaintiff's employment
> contract was terminated because he settled a prior age
> discrimination lawsuit against another school corporation, you
> must decide that Hanover Community School Corporation
> would not have terminated Plaintiff's employment contract if
> he had not settled a prior age discrimination lawsuit against
> another school corporation but everything else had been the
> same.
>
> If you find that Plaintiff has proved this by a
> preponderance of the evidence, then you must find for
> Plaintiff. However, if you find that Plaintiff did not prove this
> by a preponderance of the evidence, then you must find for
> Hanover Community School Corporation.

*See* Final Instruction No. 27 [DE 376 at 38.] This is a pattern instruction that the parties

agreed to (along with thirty-eight other instructions) at the jury instruction conference

held pursuant to Federal Rule of Civil Procedure 51(b). At the conference, I provided

the parties my proposed instructions and gave them an opportunity to object on the

record and out of the jury's hearing before the instructions were delivered to the jury.

Proposed Jury Instruction No. 27 was identical to the final instruction except that the

last phrase of the first paragraph, "but everything else had been the same," was

accidentally omitted. I told the parties that I would add that phrase to the final

instruction and leave everything else the same. I specifically asked if Vukadinovich had

any objection to that, and he said "no."

Rule 51(d)(2) affords me discretion to "consider a plain error in the instructions that has not been preserved . . . if the error affects substantial right." The intentional exclusion of a party's proposed instruction is not a "plain error." Rather, it was a discretionary decision. In addition, Vukadinovich failed to articulate how he was affected by the refused jury instruction, let alone how his "substantial rights" were affected. *See Consumer Products Research & Design, Inc. v. Jensen*, 572 F.3d 436, 439 (7th Cir. 2009). Final Jury Instruction No. 27, and the Final Jury Instructions as a whole, were not misleading. They provided the jury with an explanation of the issues to be decided and so there is no reason for me to order a new trial. Vukadinovich's motion for new trial as to the retaliation claim is, therefore, denied.

### Miscellaneous Additional Post-Trial Motions

After the trial, Vukadinovich moved for a hearing on the issue of back pay, front pay, and fringe benefit losses. [DE 382.] As I have repeatedly explained to Vukadinovich, back pay and front pay potentially were available to him as damages if he was successful on his ADEA age discrimination or retaliation claim. *See Franzoni v. Hartmarx Corp.*, 300 F.3d 767, 773 (7th Cir. 2002). I explained that if he was successful on either of those claims, I would subsequently decide the issue of back pay and front pay. While I permitted Vukadinovich's expert to testify regarding back pay and instructed the jury on the issue, I told the parties that the jury would be acting in an advisory capacity, with the ultimate amount of back pay and front pay to be decided by me

28

should Vukadinovich be successful on either ADEA claim. Because the jury found in favor of the defendants and against Vukadinovich on his age discrimination and retaliation claims, it did not need to suggest an amount for back pay. Likewise, an additional hearing is not needed on the issue because I am upholding the jury's verdict on those claims and, as such, Vukadinovich is not entitled to back pay or front pay. For these reasons, his motion for a hearing on the issue is denied.

The defendants filed a motion to strike from one of Vukadinovich's reply briefs references that he made to compromise offers made by the defendants. *See* Fed. R. Evid. 408. [DE 400.] In Vukadinovich's reply, he cites to details of two compromise negotiations that occurred between the parties during and after the trial. [DE 399 at 13-15.] Under Federal Rule of Evidence 408, "[e]vidence of the following is not admissible—on behalf of any party—either to provide or disprove the validity or amount of a disputed claim . . . (1) furnishing, promising, or offering . . . a valuable consideration in compromising or attempting to compromise the claim; and (2) conduct or a statement made during compromise negotiations about the claim." But this is a rule of *evidence*. The idea is to keep from a jury any settlement talk that may have occurred. It doesn't prevent a party from telling a court in a brief what may have been said in that regard. In any event, I haven't paid any attention to it, and have not considered these references to the compromise negotiations when rendering this

opinion. For these reasons, the defendants' motion to strike the references to settlement discussion is denied as moot.

Finally, Vukadinovich filed what he called a petition for judicial notice, asking me to consider new evidence not presented at trial. [DE 403.] I did not consider any of the facts or issues raised in his motion and it is also , therefore, denied as moot.

## Conclusion

For the aforementioned reasons, the Court:

- **DENIES** Vukadinovich's Motion for New Trial As to the Retaliation Claim Due to the Plain Error of Omission of Jury Instruction [DE 389];

- **DENIES** Vukadinovich's Motion for Judgment Notwithstanding Verdict As to  the Compensatory Damages Claim Against Carol Kaiser [DE 391];

- **DENIES** Vukadinovich's Motion for Judgment Notwithstanding Verdict As To the Age Discrimination Claim Against Hanover Corporation Community[sic] School [DE 393];

- **DENIES** Vukadinovich's Motion for Judgment Notwithstanding the Verdict As to the Retaliation Claim Against Hanover Community School Corporation [DE 392];

- **DENIES** Defendants' Renewed Motion for Judgment As a Matter of Law or, In the Alternative, Motion to Vacate Damage Award [DE 394];

- **DENIES** Vukadinovich's Motion for Hearing on Damages [DE 382];

- **DENIES AS MOOT** Defendants' Motion to Strike Plaintiff's Reference to Inadmissible Compromise Offers in Violation of Federal Rule of Evidence 408 [DE 400]; and

- **DENIES AS MOOT** Vukadinovich's Petition for Judicial Notice [DE 403].

**SO ORDERED**.

ENTERED: October 12, 2016

        s/ Philip P. Simon          
**PHILIP P. SIMON, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**